IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 19, 2000 Session

## STATE OF TENNESSEE v. WILLIAM LEWIS HOUSTON

**Direct Appeal from the Criminal Court for Giles County**
**No. 8429- 8437     Jim T. Hamilton, Judge**

---

**No. M1999-01430-CCA-R3-CD - Filed December 7, 2000**

---

Defendant was convicted by a Giles County jury of eight drug offenses and one count of aggravated assault. He received an effective sentence of seventy-two years.  In this appeal, the defendant makes the following allegations:  (1)  the evidence was insufficient to support his convictions; (2)  the trial court committed plain error by consolidating all nine indictments for trial; (3)  the process of selecting the jury venire was unconstitutional; (4)  the trial court improperly limited the defendant's cross-examination of the undercover agent; (5)  the trial court erred by admitting into evidence transcripts of certain tape recorded conversations and failed to properly instruct the jury concerning the transcripts; and (6)  the trial court erred in its sentencing determinations.  We conclude the trial court improperly sentenced the defendant and reduce the sentences to an effective term of forty-six years.  The judgments of the trial court are affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Edward L. Hilland, Nashville, Tennessee (at trial) and Robert D. Massey, Pulaski, Tennessee (on appeal), for the appellant, William Lewis Houston.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Mike Bottoms, District Attorney General; Robert C. Sanders and Richard H. Dunavant, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The defendant was convicted on four counts of selling 0.5 grams or more of cocaine, two counts of selling 26 grams or more of cocaine, one count of facilitation of the sale of 0.5 grams or more of cocaine, one count of selling counterfeit cocaine, and one count of aggravated assault.  He received an effective sentence of seventy-two years. In this appeal, the defendant challenges (1) the

sufficiency of the evidence; (2) the consolidation of all nine indictments for trial; (3) the constitutionality of the jury venire; (4) the trial court's limitation of his cross-examination of the undercover agent; (5) the admission of transcripts of the tape recorded conversations; and (6) the length and the consecutive nature of his sentences. We modify the sentences, but affirm the judgments of the trial court in all other respects.


## FACTS

Between February and May of 1997, Ted Watkins, a paid undercover agent, conducted a series of drug transactions with the defendant. During these transactions, the undercover agent was wired with an audio-taped transmission device which was monitored by Officer Dan Miller of the Giles County Sheriff's Department and Agent Pat Howell of the Tennessee Bureau of Investigation. At trial, the undercover agent, Miller and Howell testified about the underlying transaction for each indictment. The undercover agent testified that he coordinated the amount of cocaine that would be purchased during each transaction with Miller and Howell. The undercover agent further testified that telephone calls transpired between the defendant and him before each buy. These telephone conversations were taped by the undercover agent and admitted into evidence at trial. Miller and Howell also testified that, prior to each transaction, they met with the undercover agent at a previously arranged location where both the undercover agent and the agent's vehicle were searched. The undercover agent was then wired with the transmitter and given money for the purchase.

Indictment No. 8429 alleged that on February 19, 1997, the defendant sold 0.5 grams or more of cocaine. The state's proof revealed that on this date the undercover agent contacted the defendant, and the defendant set the time and place for the sale. When the undercover agent arrived at the defendant's residence, the defendant paged someone. When Andrew Gilbert arrived, defendant instructed the undercover agent to follow Gilbert to a trailer behind the defendant's house. Gilbert transferred 1.9 grams of cocaine to the agent for $110.

Indictment No. 8430 alleged that on February 21, 1997, the defendant sold 0.5 grams or more of cocaine. The state's proof revealed that on this date the undercover agent arrived at the defendant's residence, and the defendant told him to go to the back of a trailer next door where he would find the cocaine located under a rock. The defendant further stated that the undercover agent was to leave the money under the rock. The undercover agent followed the defendant's instructions and purchased 6.7 grams of cocaine for $325.

Indictment No. 8431 alleged that on March 7, 1997, the defendant sold 0.5 grams or more of cocaine. The state's proof revealed that on this date the undercover agent arrived at the defendant's residence and found the defendant and Gilbert arguing. The undercover agent learned that Gilbert had locked the keys in the trailer where the drugs were located. The defendant contacted a realtor to arrange for a new set of keys, and then asked the undercover agent to retrieve the keys from the realty company. When the undercover agent returned with the keys, he got 13.9 grams of cocaine from Gilbert for $675. The defendant was convicted of facilitation of this sale.

2

Indictment No. 8432 alleged that on March 13, 1997, the defendant sold 0.5 grams or more of cocaine. The state's proof revealed that on this date the undercover agent, after speaking with the defendant on the phone, went to defendant's residence where defendant again instructed the undercover agent to obtain the cocaine from under the rock where he was to leave the money. The undercover agent testified that the trailer was only a few steps from the defendant's house, and he secured 20.3 grams of cocaine and left $1,200 under the rock. He then returned to the defendant's house and had the defendant test the substance to insure that it was indeed cocaine.

Indictment No. 8433 alleged that on March 19, 1997, the defendant sold 0.5 grams or more of cocaine. The state's proof revealed that the undercover agent had placed a call to the defendant about making a buy, and the defendant informed him there was a "drought," meaning he was unable to obtain cocaine. Defendant stated he had called from "Houston to Indianapolis." However, the defendant later called the undercover agent and stated that he had obtained some cocaine. The undercover agent arrived at defendant's residence, and the two went into a trailer behind defendant's residence. The undercover agent weighed the cocaine, and the defendant counted the $1,220 given to him by the undercover agent. The amount of cocaine purchased was 17.2 grams.

Indictment No. 8434 alleged that on March 27, 1997, the defendant sold 26 grams or more of cocaine. The state's proof revealed that the undercover agent on this date was again initially informed that there was a "drought," but to "hold on," he would "put [him] down." Later that day, the defendant contacted the undercover agent and told him he had obtained the cocaine. When the undercover agent arrived, he and defendant again went to the trailer. "Another man" was also there. The undercover agent weighed the cocaine and discovered it was not the agreed upon amount. He told the defendant he could not purchase the cocaine because it was not what they agreed upon. Subsequently, the defendant offered to sell the cocaine for the price of $2,350, and the transaction was completed. The cocaine weighed 49.1 grams.

Indictment No. 8435 alleged that on April 17, 1997, the defendant sold 26 grams or more of cocaine. The state's proof revealed that on this occasion, after talking with defendant by phone, the undercover agent entered the defendant's residence and met an unidentified person. The defendant informed the undercover agent and the unidentified person to go outside by the house and conduct the transaction. The two went outside, and the undercover agent purchased 80.5 grams of cocaine. They then returned to the defendant's residence, where the unidentified man counted the money.

Indictment No. 8437 alleged that on May 1, 1997, the defendant sold counterfeit cocaine. The state's proof revealed that, after a phone conversation with the defendant concerning the proposed purchase of cocaine, the undercover agent went to the defendant's residence where he was met by Gilbert. The undercover agent inquired as to the whereabouts of the defendant. He was informed by Gilbert that he was in the residence with company, and that Gilbert would conduct the transaction. After securing what purported to be two ounces of cocaine for $2,950, the undercover agent went to the pre-arranged meeting place and turned the substance over to Agent Howell. Agent Howell immediately recognized that the substance was not cocaine.

Indictment No. 8436 alleged that on May 1, 1997, the defendant assaulted Agent Howell by the display of a deadly weapon. The state's proof revealed that, after the transaction described in Indictment No. 8437, Howell and the undercover agent discovered that the substance purported to be cocaine was counterfeit. Thereafter, the undercover agent along with Howell returned to the defendant's residence to demand the return of the money, at which point the defendant drew his weapon and pointed it at Howell. Howell then drew his pistol, and the defendant fled into the residence.

The jury found the defendant guilty as charged on each indictment with the exception of Indictment No. 8431, in which the jury convicted the defendant of the lesser charge of facilitation of the sale of 0.5 grams or more of cocaine.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

In his brief the defendant challenges the sufficiency of the evidence supporting his convictions. When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App.1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Id.* In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

**B. Analysis**

In cases 8430, 8432, 8433, and 8434, the undercover agent testified that the defendant set up each transaction and directly participated in each sale. The defendant offered no evidence to dispute this testimony. Thus, we conclude that the evidence was sufficient for the jury to find that the defendant knowingly sold cocaine over 0.5 grams as alleged in cases 8430, 8432, and 8433, and knowingly sold cocaine over 26 grams as alleged in case 8434.

In cases 8429 and 8437, the evidence reveals that the defendant set up both transactions; the undercover agent came to the defendant's residence; and the actual transfers were made by Gilbert. In both instances the jury could conclude that the defendant promoted the sales and solicited Gilbert to make the actual transfers. Thus, the jury could reasonably conclude that the defendant was criminally responsible for the conduct of Gilbert. *See* Tenn. Code Ann. § 39-11-402(2). Accordingly, the evidence is sufficient to support the convictions for selling cocaine over 0.5 grams in case 8429 and selling counterfeit drugs in case 8437.

The defendant was charged with the sale of 0.5 grams or more of cocaine in case 8431, and the jury convicted him of the facilitation of the sale. We conclude the evidence was sufficient for the jury to conclude the defendant knew that Gilbert was to sell the undercover agent cocaine and "knowingly furnishe[d] substantial assistance" in the sale of the cocaine. Tenn. Code Ann. § 39-11-403(a). The undercover agent testified that he contacted the defendant to "set up" the sale, but that when he arrived, Gilbert had locked the keys in the trailer where the cocaine was located. He further stated that it was the defendant who contacted the realtor about obtaining another set of keys and instructed him to retrieve the keys from the realty company. The evidence was sufficient to establish that the defendant "set up" the sale and rendered substantial assistance; thus, the jury could reasonably conclude the defendant facilitated the sale of the cocaine in case 8431.

Although the sufficiency of the evidence for selling over 26 grams of cocaine in case 8435 presents a closer question, we conclude the evidence is sufficient to support the verdict. Prior to the actual sale on April 17, 1997, the defendant and the undercover agent had conversations concerning the agent's purchase of cocaine. The defendant told the agent he was having difficulty finding cocaine. On April 17th, the defendant advised the agent that the seller was at his residence. The agent went to defendant's residence where the agent was told by defendant to consummate the buy with the unidentified third party outside defendant's residence. Thus, the jury could reasonably conclude the defendant promoted the sale, assisted the sale by getting both parties together at his residence, and solicited the third party to make the sale. Thus, the evidence was sufficient to establish that the defendant was criminally responsible for the sale by the third party in case 8435. *See* Tenn. Code Ann. § 39-11-402(2).

Finally, we conclude the evidence was sufficient for the jury to find the defendant guilty of aggravated assault in case 8436. Agent Howell testified that the defendant pointed a pistol at him, and he feared for his life. *See* Tenn. Code Ann. § 39-13-101(a)(2), -102(a)(1)(B).

**SEVERANCE**

5

The defendant contends the trial court erred by consolidating all nine of the indictments for trial. However, the defendant voiced no objection to the state's motion to consolidate and failed to include this issue in his motion for new trial. Thus, this issue is waived. Tenn. R. App. P. 3(e), 36(a); *see* State v. Walker, 910 S.W.2d 381, 386 (Tenn. 1995). Furthermore, we do not find, as defendant contends, that the consolidation of his offenses for trial constitutes plain error under Tenn. R. Crim. P. 52(b). *See* State v. Chris Smith, No. 03C01-9807-CR-00259, 1999 WL 619042, at *1 (Tenn. Crim. App. filed August 17, 1999, at Knoxville) (approving consolidation of drug transactions with similar factual patterns).

## JURY VENIRE

The defendant challenges the manner in which the jury venire was chosen. Specifically, he contends the selection process systematically excluded African-Americans and senior citizens from the jury pool.

The United States Supreme Court set forth a three-pronged test in Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), for determining whether a jury was properly selected from a "fair cross-section of the community" pursuant to the Fifth and Fourteenth Amendments. Accordingly, in order to establish a *prima facie* violation of the fair cross-section requirement, the defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;
>
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
>
> (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364, 99 S.Ct. at 668. The Tennessee Supreme Court has adopted this test. State v. Buck, 670 S.W.2d 600, 610 (Tenn.1984).

At the hearing held on this issue, Judy Callahan, Circuit Court Clerk for Giles County, testified that prospective jurors were randomly selected by computer from a list of Giles County citizens with driver's licenses. The only jurors excluded from this list included those who were known by the jury commission to be deceased or extremely elderly. Elderly was defined by the clerk as persons who due to advanced age, or being in a nursing home, were incapable of serving on a jury.

Our Supreme Court has previously held that selecting jurors by using a list of licensed drivers does not violate either the federal or state constitution. State v. Mann, 959 S.W.2d 503, 535 (Tenn.

6

1997) (Appendix). Furthermore, we do not find that the process of excluding certain jurors from the pool due an incapability of serving was designed to systematically exclude any distinctive groups in the community. The jury venire represented a "fair cross-section" of the community; thus, the selection process was constitutional.

## IMPEACHMENT OF UNDERCOVER AGENT

### A. Prior Sworn Testimony

Defense counsel argues that the undercover agent gave untruthful testimony under oath at defendant's prior forfeiture hearing, and he asserts the trial court erred in refusing to allow him to cross- examine the undercover agent regarding the allegedly untruthful testimony.

At the forfeiture hearing, defense counsel asked the undercover agent the following question: "Were you back then or are you now, presently, under any criminal indictment[1] charge, conviction, or probation," to which the undercover agent responded, "no." However, four days prior to this testimony the undercover agent had been arrested on the following charges: driving on a revoked license, driving under the influence, violation of implied consent law, and possession of a handgun without a permit.

Prior to trial, the state sought to exclude the introduction of this evidence, claiming that the undercover agent answered the question truthfully because he was not under "indictment." The defendant argued that the evidence should be allowed under Tenn. R. Evid. 608 (b) as a prior bad act relating to the witness' character for untruthfulness. The trial court found that the evidence was not probative as to any material issue and excluded the evidence.

We conclude that the subject testimony was probative on the issue of the witness' credibility; namely, his character for untruthfulness. Tenn. R. Evid. 608(b). Whether the witness understood the question only to relate to "indictments" as opposed to "charges" goes to the weight of the evidence. Thus, defense counsel should have been allowed to pursue whether or not the witness was untruthful under oath at the forfeiture hearing. Had the witness denied that he was untruthful, no further extrinsic evidence could be admitted to prove otherwise. Tenn. R. Evid. 608(b).

However, the defendant failed to present an offer of proof as to the undercover agent's answer to this inquiry. We do not know how the witness would have responded to defense counsel's inquiry. In order for an appellate court to rule upon an issue predicated upon the exclusion of testimony, the evidence excluded must appear in the record in the form of an offer of proof. Tenn. R. Evid. 103(a)(2); State v. Robinson, 971 S.W.2d 30, 40 (Tenn. Crim. App. 1997). If the proposed testimony is absent from the record, this court is precluded from considering the issue. Robinson, 971 S.W.2d at 40. We simply cannot speculate as to the probative value of the evidence because

---

[1]There was no comma after the word "indictment" in the forfeiture transcript.

such a determination depends upon the exact testimony given by the undercover agent in response to defense counsel's inquiry. However, regardless of the undercover agent's response to defense counsel's inquiry, it would appear that the result of the trial would have been the same in light of the overwhelming evidence of guilt. *See* Tenn. R. App. P. 36(b). This issue is without merit.

## B. Pending Charges

The defendant contends that the trial court improperly pre-empted his cross-examination of the undercover agent by allowing the state to resume its direct examination and inquire into the witness' pending criminal charges.

At a pre-trial hearing, the trial court sustained the state's motion to exclude from evidence the undercover agent's pending Giles County charges. The charges included a DUI, two bad check charges, and criminal impersonation. Before cross-examination, the defendant sought a ruling under Tenn. R. Evid 608(b)[2] on the admissibility of the undercover agent's two pending charges. The trial court initially ruled that the defendant would be allowed to inquire into the charges on cross-examination. However, the state argued that the trial court had previously ruled the charges were to be excluded. The trial court then stated that the previous ruling only related to the DUI charge. The state complained that their understanding was that the motion had been granted as to all charges, and that had they known defense counsel would be allowed to ask about the bad check and criminal impersonation charges on cross-examination, they would have inquired into the charges on direct examination. Thereafter, the trial court ruled that since cross-examination had not begun, the state would be allowed to continue their direct examination and ask the witness about the pending charges.

The scope, manner and control of examination of witnesses is largely within the trial court's discretion, and a ruling will not be disturbed absent a finding of abuse of discretion. State v. Harris, 839 S.W.2d 54, 72 (Tenn. 1992). We find no impropriety here. Although a literal reading of Tenn. R. Evid. 608(b) would suggest that prior bad acts may only be pursued on cross-examination, allowing inquiry on direct examination would not be reversible error. N. Cohen *et al.*, **Tennessee Law of Evidence** § 608.5 (3d ed. 1995). Regardless, defense counsel was given full opportunity to pursue the matter on cross-examination. Thus, since the jury heard evidence regarding the witness' pending charges, the defendant has failed to demonstrate that he was prejudiced by the trial court's ruling. *See* Tenn. R. App. P. 36(b). This issue is without merit.

## TRANSCRIPTS

The defendant argues that the trial court should have given a limiting instruction regarding the transcripts of the taped phone conversations between the undercover agent, defendant, and others.

---

[2]The defendant raises this issue strictly under Tenn. R. Evid. 608(b) and not under Tenn. R. Evid. 616. Generally, a party may offer evidence that a witness is biased in favor of a party. *See* Tenn. R. Evid. 616. This court has previously held that a state witness' pending charges are relevant to show he or she may have a motive to testify in favor of the state. State v. Smith, 893 S.W.2d 908, 924 (Tenn. 1994). We confine our analysis to Tenn. R. Evid. 608(b).

The defendant also contends the trial court erred in refusing to redact statements made by the undercover agent and in allowing the transcripts to be sent to the jury room during deliberations.

The state introduced into evidence transcripts of taped phone recordings between the undercover agent and the defendant. The defendant now argues that the trial court should have given a limiting instruction to the jury admonishing them that only the statements and declarations of the defendant could be considered in determining guilt or innocence. Initially, we note that defense counsel failed to request such an instruction; thus, the defendant has waived this argument. *See* State v. Cameron, 909 S.W.2d 836, 853 (Tenn. Crim. App. 1995); Tenn. R. Evid.. 105; Tenn. R. App. P. 36(a). Nonetheless, we will address the issue.

Generally, the jury should be instructed that only the statements, admissions, and declarations of the defendant in a taped conversation may be considered on the question of guilt or innocence. State v. Jones, 598 S.W.2d 209, 223 (Tenn. 1980). However, defendant has not referred to any portion of the recorded conversations in which declarations by the undercover agent inured to defendant's prejudice. Only those statements of others that are prejudicial to defendant need be redacted. *Id.* Declarations by others are sometimes necessary to place a defendant's statements in proper context. In this case defendant has not demonstrated the need to redact any of the undercover agent's statements nor any prejudice resulting from the failure to give limiting instructions. *See* State v. James Clayton Young, Jr., No. 01C01-9605-CC-00208, 1998 WL 258466, at *20 (Tenn. Crim. App. filed May 22, 1998, at Nashville).

Finally, we conclude the trial court did not err in allowing the transcripts to be viewed by the jury during deliberations. Tenn. R. Crim. P. 30.1 states that the jury shall take to the jury room all exhibits received in evidence for the jury's examination during deliberations, unless good cause is shown for not taking an exhibit to the jury room. *See* State v. Stanley Lawson, No. 01C01-9607-CR-00320, 1997 WL 661483, at *11 (Tenn. Crim. App. filed October 24, 1997, at Nashville). *perm. to app. denied* (Tenn. 1998). The defendant has failed to demonstrate good cause for excluding the transcripts.

Thus, this issue is without merit.

### SENTENCING

The defendant contends the record is devoid of any indication that the trial court properly evaluated the sentencing principles and all relevant facts and circumstances of the offenses. Thus, he argues that his sentence should be reviewed *de novo* without a presumption of correctness. The defendant challenges the length of each of his sentences within the range and the imposition of six consecutive sentences. We agree that the sentences must be examined *de novo* without a presumption of correctness.

## A. Length of Sentence

9

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). However, this presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

In order to allow meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Poole, 945 S.W.2d at 96 (quoting State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994)).

At the conclusion of the sentencing hearing, the trial court simply stated that all the enhancement factors filed by the state applied and none of the mitigating factors asserted by the defendant applied. The state's original notice listed the following enhancement factors: (1) the defendant had a previous history of criminal convictions and behavior beyond that necessary to establish the appropriate range; (2) the defendant was a leader in the commission of the offense; and (3) the crime was committed under circumstances in which the potential for bodily injury to a victim was great. *See* Tenn. Code Ann. § 40-35-114 (1), (2), (16). Additionally, the state's amended notice alleged that the defendant committed an offense with more than one victim, and the defendant had no hesitation about committing an offense where the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114 (3), (10). The trial court sentenced the defendant to the maximum Range I sentences of twelve years on all six of his sale of cocaine convictions; six years for facilitation of the sale of cocaine and aggravated assault; and two years for the sale of counterfeit cocaine. Since the trial court did not articulate how each of the alleged enhancement factors applies, we must review the defendant's sentence *de novo* without any presumption of correctness.

**(a) Enhancement Factor (1)**

Enhancement factor (1), the defendant had an extensive history of prior criminal behavior, applies to each of the defendant's convictions. Tenn. Code Ann. § 40-35-114 (1). At sentencing, a state's witness testified that the defendant had previously sold cocaine to an undercover agent in 1992, and paid another undercover agent, pretending to be a police officer taking bribes, to keep him informed about the police department's drug investigations. Furthermore, the defendant's wife testified regarding the defendant's involvement in a scheme to obtain multiple prescriptions for painkillers from various doctors and pharmacies over a period of several years.

It is further apparent the defendant was a major drug dealer. During the taped phone

conversations between the defendant and the undercover agent, the defendant stated that he checked with his contacts in Nashville, Dallas, Detroit and Cincinnati about obtaining cocaine for re-sale. Therefore, we apply enhancement factor (1) and give it great weight.

### (b) Enhancement Factor (2)

Additionally, with regard to the defendant's drug convictions, he was "a leader" of the offenses in cases 8429, 8435 and 8437. Tenn. Code Ann. § 40-35-114 (2). Testimony from the officers and the undercover agent revealed that in these cases the defendant used an intermediary in selling the cocaine and counterfeit cocaine.

### (c) Enhancement Factor (3)

Factor (3), the offense involved more than one victim, does not apply to any of the defendant's drug convictions. As to aggravated assault, the record reveals that both the undercover agent and Agent Howell were present when the defendant displayed his gun. Although the indictment for aggravated assault only lists Agent Howell as the victim, the undercover agent testified that the defendant also pointed the gun at him. Thus, we apply enhancement factor (3) to the aggravated assault conviction.

### (d) Enhancement Factors (10) and (16)

This court has previously held that factor (10), the defendant had no hesitation about committing a crime when the risk to human life was high, and factor (16), the crime was committed under circumstances where the potential for bodily injury was great, are inapplicable to drug convictions. Tenn. Code Ann. § 40-35-114 (10), (16); *see* State v. Keel, 882 S.W.2d 410, 421-22 (Tenn. Crim. App. 1994);*but see* State v. Middlebrooks, 819 S.W.2d 441, 446-47 (Tenn. Crim. App. 1991). While our court has recognized that cocaine-related cases can be committed under factual scenarios which would justify factor (16), the nature of the particular controlled substance cannot in and of itself be used to justify use of these particular enhancement factors." State v. Keel, 882 S.W.2d at 421-22.

The evidence indicates that the defendant was in the business of drug trafficking. However, there is no evidence in the record that these crimes were committed under circumstances which caused a great potential for bodily injury or risk to human life other than the nature of the substances sold. Likewise, this court has held that it is improper to apply these factors based merely on the quantity or quality of the substance underlying the offense. *See* State v. Norman G. Copeland, No. 01C01-9602-CC-00057, 1997 WL 137407, at *11 (Tenn. Crim. App. filed March 27, 1997, at Nashville). Thus, enhancement factors (10) and (16) do not apply to any of the drug cases.

Thus, the only remaining issue is whether factors (10) and (16) should apply to defendant's sentence for aggravated assault. Factor (10) is an element of aggravated assault. *See* Tenn. Code

Ann. § 39-13-102. However, this Court has held that even when factor (10) is an element of the offense, it may still be applied where the defendant creates a high risk to the life of a person other than the victim. State v. Bingham, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995). In this case, the defendant's perpetration of the aggravated assault created a high risk to the life of the undercover agent as well as Agent Howell. The undercover agent testified he was in close proximity to the defendant and also stated that he thought he would be killed. Thus, we conclude factor (10) applies to the defendant's conviction for aggravated assault.

Within this Court there is inconsistent application of factor (16) where the potential for bodily injury to a person other than the named victim is great. In State v. Michael Lebron Taylor, No. 03C01-9810-CR-00366, 1999 WL 692579, at *6-7 (Tenn. Crim. App. filed September 8, 1999, at Knoxville), *perm. to app. denied* (Tenn. 1999), this Court concluded that both factors (10) and (16) could be applied to enhance a defendant's sentence when applied to a person other than the named victim. However, a separate panel of this court reached a different result in State v. John Bradley Lowery, No. E1998-0034-CCA-R3-CD, 2000 WL 748103, at *8 (Tenn. Crim. App. filed June 12, 2000, at Knoxville), *perm. to app.* filed August 16, 2000. The panel concluded that the plain language of the statute demonstrates that factor (16) restricts its application to "a victim." *Id.* Thus, the court concluded that factor (16) may not be established by showing potential harm to a bystander. We need not resolve the conflict in this case. In light of our use of factor (10), we conclude that we would impose the same length of sentence regardless of whether we applied factor (16).

### (e) Mitigating Factors

Finally, upon review of the mitigating factors asserted by the defendant, we find none of the factors to be applicable.

### (f) Setting of Sentences

We conclude that the applicable enhancement factors and sentences shall be as follows:
Case 8429- selling cocaine over 0.5 grams- factors (1) and (2)- sentence of 12 years
Case 8430- selling cocaine over 0.5 grams- factor (1)- sentence of 11 years
Case 8431- facilitation of sale of cocaine over 0.5 grams- factor (1)- sentence of 5 years
Case 8432- selling cocaine over 0.5 grams- factor (1)- sentence of 11 years
Case 8433- selling cocaine over 0.5 grams- factor (1)- sentence of 11 years
Case 8434- selling cocaine over 26 grams- factor (1)- sentence of 11 years
Case 8435- selling cocaine over 26 grams- factors (1) and (2)- sentence of 12 years

Case 8436- aggravated assault- factors (1), (3), and (10)- sentence of 6 years
Case 8437- selling counterfeit cocaine- factors (1) and (2)- sentence of 2 years

## B.  Consecutive Sentencing

The defendant argues the trial court erred in running each of his Class B drug convictions

12

consecutively for an effective sentence of seventy-two years. A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) [t]he defendant is an offender whose record of criminal activity is extensive;...

Tenn. Code Ann. § 40-35-115(b); *see also* State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995).

The trial court found both criteria (1) and (2) applied. Regardless of whether the defendant devoted his life to drug trafficking as a major source of livelihood, we conclude the record clearly demonstrates that the defendant had an extensive record of criminal activity. *See* Tenn. Code Ann. § 40-35-115 (2). Prior criminal activity does not require prior convictions; prior criminal behavior is sufficient. State v. Fredrick Sledge, No. 02C01-9405-CR-00089, 1997 WL 730245, at * 32 (Tenn. Crim. App. filed November 25, 1997, at Jackson), *aff'd as modified and remanded on other grounds*, 15 S.W.3d 93 (Tenn. 2000). Here, the record reveals, and the trial court justifiably concluded, that the defendant had been involved over a period of time in a major drug trafficking operation. Therefore, we conclude the defendant is an appropriate candidate for consecutive sentencing, but our inquiry does not end with this determination.

The general principles of sentencing require that the length of sentences be "justly deserved in relation to the seriousness of the offense" and "be no greater than that deserved for the offense committed." State v. Lane, 3 S.W.3d 456, 460 (Tenn. 1999) (citing Tenn. Code Ann. §§ 40-35-102(1), -103(2)). In light of the recent decisions by this court, we conclude the trial court erred in ordering all sentences to be served consecutively. *See* State v. Richard Lynn Norton, No. E1999-00878-CCA-R3-CD, __ WL__, at *__ (Tenn. Crim. App. filed Aug. 22, 2000, at Knoxville); State v. John Derrick Martin, C.C.A. No. 01C01-9502-CR-00043, 1995 WL 747824 (Tenn. Crim. App. filed December 19, 1995, at Nashville), *aff'd and remanded on other grounds*, 940 S.W.2d 567 (Tenn. 1997); *see also* State v. Thornton, 10 S.W.3d 229, 244 (Tenn. Crim. App. 1999).

In Martin, the defendant was arrested after four sales of cocaine to undercover agents. He was convicted on three counts of the sale of cocaine, possession with intent to sell cocaine, possession of drug paraphernalia and driving on a suspended license. The trial court imposed consecutive sentences for each drug conviction for an effective sentence of 40 years. *See* Martin, at *2. The panel in Martin concluded that while Martin did qualify under Tenn. Code Ann. 40-35-115 for consecutive sentencing, the imposition of consecutive sentences for each drug offense was inappropriate because "the severity of the crimes could vary significantly depending upon the specific number of buys the officers chose to conduct and the amounts purchased in each buy." *Id.* at * 5. Furthermore, the panel in Martin determined that "forty years for the drug offenses is [not] reasonably related to the severity of these four crimes." *Id.* Thus, the defendant's forty-year sentence was reduced to twenty years and nine months.

13

Norton was convicted of three drug offenses and received three consecutive sentences. Using the <u>Martin</u> rationale, the <u>Norton</u> panel reduced the defendant's sentence from thirty-six years to twenty-four years. The court reasoned that the "imposition of three consecutive sentences would permit investigating officers to dictate the length of a sentence based upon the number of controlled buys they arrange and the amounts purchased." <u>Norton</u>, slip op. at 12.

The same is true in the instant case. The authorities continued to arrange controlled buys. Even though we conclude the defendant unquestionably qualifies for consecutive sentencing based upon an extensive record of criminal activity, we find that the imposition of an effective seventy-two year sentence is not consistent with our general principles of sentencing. The sentence must be justly deserved, and no greater than that deserved, for the offenses. <u>Lane</u>, 3. S.W.3d at 460. We conclude defendant should serve four of his sentences, rather than six, consecutively. Thus, the defendant's convictions for sale of cocaine under indictments 8429, 8430, 8434, and 8435 shall be served consecutively to each other with all other sentences to be served concurrently. Therefore, in light of our reduction in the length of some of the defendant's sentences, we conclude the defendant's sentences shall be reduced from an effective term of seventy-two years to forty-six years.

We recognize that this sentence is higher than those imposed in <u>Norton</u> and <u>Martin</u>. However, this defendant's drug and other criminal activity is more egregious. Two of the cases involved well over 26 grams of cocaine; namely, 49.1 grams and 80.5 grams. Five other cases involved well over 0.5 grams; namely, 1.9 grams, 6.7 grams, 13.9 grams, 20.3 grams and 17.2 grams. The counterfeit cocaine case was supposed to involve two ounces of cocaine. Furthermore, the evidence in this case reveals that the defendant had drug contacts across the United States. We conclude an effective sentence of forty-six years is appropriate under all the circumstances.

## <u>CONCLUSION</u>

Upon our review of the record, we conclude that all convictions should be affirmed; however, we conclude some of the sentences should be modified. The sentences shall be twelve years in cases 8429 and 8435; eleven years in cases 8430, 8432, 8433, and 8434; five years in case 8431; six years in case 8436; and two years in case 8437. Cases 8429, 8430, 8434, and 8435 shall run consecutively to each other with all other sentences running concurrently, for an effective sentence of forty-six years. The cases are remanded to the trial court for entry of amended judgments.

_____
JOE G. RILEY, JUDGE

14